USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 4, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

RENZER BELL                              :

       Plaintiff,                  :     09 Civ. 1699 (PAC) (RLE)

                                    :     <u>ORDER</u>

JOHN PHAM, and TRUNG PHAM,
                                    :
       Defendants.
                                    :
------------------------------------------------------x

      HONORABLE PAUL A. CROTTY, United States District Judge:

      On October 18, 2011, the Court directed plaintiff Renzer Bell ("Bell") to submit his liquidated damage calculations, showing both probable loss and any actual damage caused by the alleged breach of Bell's contract with John Pham and Trung Pham ("defendants"). Bell was given 10 days, until October 28, 2011, to comply. (See 10/18/2011 Tr. pg 2; and pg 7).

      Consistent with what has happened previously, the Court did not receive Bell's papers on October 28, 2011. Ten days after the deadline, on November 7, 2011, defendants' counsel sent an e-mail, noting that Bell had not submitted his liquidated damage calculations. Bell responded that he "had the requisite documents mailed to the Court by the due date."

      He did not submit any proof of service, or any other proof that he complied with the Court's order. Instead, nine days later, November 16, 2011, the Court received a document entitled "Supplemental Affidavit Pursuant To Court Order" ("Aff"), consisting of 15 pages and 76 paragraphs. It bore a handwritten notation on page 1: "Duplicate Copy"; and page 15 appears to be a photocopy which states: "Affirmed on the 28th day of October, 2011" signed by Bell.

Notwithstanding the Court's doubts as to the timeliness of Bell's submission, and the complete absence of proof of compliance with the Court's Order of October 18, 2011, the Court will consider Bell's affidavit.

His affidavit does not come close to satisfying the Court's directive. Bell cites to the U.C.C. which allows the parties to provide for multiple remedies for breach of contract, including liquidated damages; claims that the liquidated damage provisions of the contract were well known to the defendants; asserts that defendants never objected to the contract term for liquidated damage; maintains that the contract provides that the liquidated damages are not a penalty; states that defendants are sophisticated business people, who were represented by counsel; and finally that defendants are liars.

None of these arguments is relevant, however. The issue is not whether there can be liquidated damages, but whether they are appropriate in amount sought here, given the facts of the underlying car purchase and resale transaction. The Court's concern is that the approximately $88,000 claimed as liquidated damage is also the basis for the jurisdictional amount in this diversity action. If the liquidated damages are unreasonable or inappropriate in amount, the Court may be without jurisdiction.

The Court notes that Bell's business is obtaining "new or concept automobiles whose demand will likely outstrip the supply." (Aff para. 7). The transaction at issue here called for Bell to acquire a 2008 Lexus (Model LX570) and sell it to defendants at the Manufacturer's Suggested Retail Price ("MSRP"), plus $4080. Bell was also able to obtain the car at a discount of $3,500 to the MSRP. This would be a fair approximation of the damages caused by any breach of the agreement between Bell and defendants. Bell described the $7,580 as his "Loss Profits From Disputed Transaction." (Aff para 48).

In paragraph 47 of his affidavit, Bell sets forth his "Estimate Approximating Damages." The total amount of damage is approximately $169,000, but Bell reduces the amount. "[B]earing in mind the commercial realities of a potentially deepening economic contraction, the Plaintiff reduced the calculation arrived at using its risk matrix (i.e., the approximate $169,000) by thirty (30) percent in the interest of good commercial relations with the defendants and in the interest of airing (sic) on the side conservativeness (sic)." (Aff para. 74). Bell seeks $88,380 in liquidated damages, which is not a 30% discount, but rather a 47% discount. Nonetheless, the claim of $169,000, even with a 47% discount, is wildly disproportionate to any reasonable claim of liquidated damages or harm done by defendants' alleged breach.

Since Bell functioned as a middleman or broker, he may have had a loss of $7,580, due to the alleged breach (i.e., the mark up of $4,080 to the MSRP, plus the $3,500 discount to MSRP Bell was able to obtain from the dealer before reselling to the defendants). Where does the additional $162,000 in claimed damages (before the 47% discount) come from? Bell asserts the following items:

| | |
|---|---|
| Loss of Anticipated Deposit | $ 3,500 |
| Loss from Car Dealer Legal Action Pursuant to UCC 2-708 | 20,400 |
| Loss Pursuant to Car Dealer Charge-Back Suit for Exportation | 27,900 |
| Legal Fees Claimed as Damages by Car Dealer | 15,000 |
| Legal Fees to Defend Suit | 10,000 |
| Loss Opportunity to Reinvest Profits from Subject Transaction | 49,000 |
| Loss Opportunity to do Business with Car Dealer | 15,160 |
| Loss Opportunity from Time Invested in the Instant Action | 20,000 |

  Costs and Disbursements to File Suit against Defendants   617

(Aff para 48).

  None of this parade of horribles occurred, of course; and none was likely to occur; they are simply numbers without any meaning. Liquidated damages may be appropriate, if reasonable in amount, and made in consideration of the actual or anticipated harm caused by the breach. Bell's calculations are at the polar opposite of the requirements for appropriate liquidated damages: they are unreasonable and do not reflect either actual or anticipated harm. An examination of several asserted bases for liquidated damages demonstrate how far away Bell is from any fair measure of liquidated damages.

  The largest item, $49,000, is for the "Loss Opportunity to Reinvest Profits from Subject Transaction." Bell calculates that defendants' breach of contract causes a "Loss Profits From Disputed Transaction" of $7,580, but then speculates that he would reinvest that amount to earn an even greater return:

> "60) That the Plaintiff deliberated over whether the reinvested profits would represent one deposit on a more expensive automobile such as Ferrari, Lamborghini, Bentley, or Aston Martin or a less expensive automobile such as a Porsche, BMW, or Mercedes.
>
> 61) That the difference in manufacturer is key given that the opportunity to sell the higher priced marques for a more substantial premium above MSRP could be less probable due to the more limited production however the premium would be higher than on the less expensive marques once a transaction was completed.
>
> 62) That the permutations for this figure are numerous given that the $7,580.00 could represent the deposit on seven (7) BMWs, two (2) BMWs and one (1) Porsche or Aston Martin, or one (1) Lamborghini.
>
> 63) That by way of example not meant to be exhaustive, it is much easier to make a $25,000.00 profit on a Lamborghini or Ferrari than it is on a BMW or Porsche.

> 64) That the other consideration was over what time frame would the damages for loss opportunity on the reinvest (sic) of profits be calculated.
>
> 65) That the Plaintiff determined the period should be two (2) years based upon a flat rate of return and not an annualized rate of return.
>
> 66) That based upon previous examples such as Exhibit A above, and chastened by the economy during 2008, and the new introductions of exotic luxury cars scheduled, the Plaintiff arrived at the figure of $49,000.00.[1]  (Aff para 60-66)

In other words, had the transaction at issue here been completed, Bell would have made $7,580, which he would have reinvested by making similar deposits on other vehicles and reselling them at a price above MSRP, while he had obtained the vehicles at a discount to the MSRP.  No one can imagine a better example of consequential damages which cannot be allowed, even if Bell calls them liquidated damages.

Further, it is apparent that Bell's calculation was not on his mind at the time of the contract with the defendants.  It is a made up, post facto rationalization, an attempt to justify liquidated damages amount.  But liquidated damages are not intended to cover speculation on how proceeds from a failed transaction might be utilized.

Bell speculates that he might have lost a legal action by the car dealer.  But there is no indication that the car dealer ever sued; and in any event, the dealer's potential damages are well shy of the $20,400 in Bell's wildly inflated measure.  Similarly, Bell's projection of a car dealer's loss of $27,900 is beyond speculation; it is a fantasy based on conjecture.  This claim is made based on the postulation that if the Lexus "was exported," the dealer "might" be charged back its profit on the Lexus sale and lose an allocation of one car which would expose Bell to damages "if

---

[1] Exhibit A is a transaction which is a complete stranger to the transaction at issue here.  Bell maintains that he earned a 15,000 percent rate of return.  This figure is calculated based on a deposit of $500 for a $75,000 Corvette.

damages "if the car dealer decided to make the Plaintiff a party to the legal action in addition to or in lieu of defendants." (Aff para 52) There is no indication of what law would permit, indeed tolerate, this post-sale restraint; or countenance these multiple contingencies. Nor is Bell entitled to the $20,000 he seeks to cover his time spent "in pursuit of a legal action against the defendants in light of the time requirements to prosecute a case as a pro se litigant." (Aff para 71) In any event, Bell's affidavit reveals that he was not quite pro se. The $617 he claims is "the cost of using either a law student or paralegal to find cases in support" of his effort to collect.

Bell recognizes that his "loss profits" are no more than $7,580. There may be unspecified damages which could be liquidated, arising out of the alleged breach, in addition to $7,580. Notwithstanding that there might be additional amounts, there is no basis for liquidated damages in the amount of $88,380, that Bell now asserts. That amount is unreasonable in light of the transaction at issue and not related to any known or likely damages.

Since liquidated damages are the basis for satisfying the jurisdictional amount requirement, and there is no basis for damages in this amount, Bell has failed to satisfy the requirements for diversity jurisdiction. Accordingly, the action must be, and is, DISMISSED. The Clerk of the Court is directed to close this case.

Dated: New York, New York
       January 4, 2012

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

Copies Mailed To:

Renzer Bell
519 Westbrooks Street South West
Cairo, GA 39828